IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:16CR270** |
| vs. | **MEMORANDUM AND ORDER** |
| MARCO JIMENEZ FERNANDEZ and MARGARITA ROBLES-AGUIRRE, | |
| Defendants. | |

This matter is before the Court on the oral and written Findings and Recommendation and Order (Filing Nos. 35, 38) of the magistrate judge[1] recommending the Court deny (1) defendant Marco Jimenez Fernandez's ("Jimenez Fernandez") Motion to Suppress (Filing No. 24) and (2) defendant Margarita Robles-Aguirre's ("Robles-Aguirre") Motion to Suppress (Filing No. 26). Jimenez Fernandez objects to the magistrate judge's Findings and Recommendations. Robles-Aguirre does not. For the reasons stated below, Jimenez Fernandez's objection is overruled and both Motions to Suppress are denied.

## I.    BACKGROUND

On June 1, 2016, Jimenez Fernandez and Robles-Aguirre were traveling east on Interstate 80 in Omaha, Nebraska, in a vehicle borrowed from a family member. Jimenez Fernandez was driving and his wife, Robles-Aguirre, was in the passenger seat. At approximately 10:30 a.m., Douglas County, Nebraska, Sheriff's Deputy David Wintle ("Deputy Wintle") stopped them for having an obstructed license plate in violation of Neb. Rev. Stat. § 60-399(2) because he was unable to read the name of the issuing state.

---

[1]The Honorable Thomas D. Thalken, then United States Magistrate Judge for the District of Nebraska. Judge Thalken retired December 31, 2016.

After Jimenez Fernandez stopped on the shoulder, Deputy Wintle asked him for his license and registration and asked him to join him in his cruiser so he could explain the violation to him. Before joining Jimenez Fernandez, Deputy Wintle asked Robles-Aguirre some questions about the couple's travel plans.[2]  Robles-Aguirre indicated they were traveling to Iowa on vacation, but she did not know the name of the city.

Deputy Wintle returned to his cruiser to speak with Jimenez Fernandez.  After discussing the reason for the stop, Deputy Wintle asked Jimenez Fernandez about the couple's travel plans.  Jimenez Fernandez indicated they were traveling to his brother's house in Iowa, but he too could not name the city.  Denying he had any address for his brother, Jimenez Fernandez stated he input "Iowa downtown" into his GPS to know where to go.  During the interview, Deputy Wintle ran records checks on Jimenez Fernandez and Robles-Aguirre and their vehicle.  When the checks revealed nothing significant, Deputy Wintle returned all of the documents to Jimenez Fernandez and informed him that he was not going to issue any tickets.  He advised Jimenez Fernandez he may want to remove the license bracket at the next gas station or rest stop so he would not get stopped again.

Deputy Wintle asked Jimenez Fernandez if he had any questions.  He did not. Deputy Wintle then asked if he could ask "a couple more questions," and Jimenez Fernandez said, "Sure."  When asked again about his destination city, Jimenez Fernandez reported he did not know the city because it was his first time.  He again said he input "center Iowa" and "downtown" into the GPS.  Deputy Wintle asked how Jimenez Fernandez would find his brother in Iowa and whether Jimenez Fernandez had a phone number for him.  Jimenez Fernandez denied having a phone number; he explained he was to meet up with his brother by posting a message on Facebook.  His brother would then come to meet him.

---

[2]Jimenez Fernandez and Robles-Aguirre both communicated with Deputy Wintle in English with little difficulty.

Deputy Wintle asked Jimenez Fernandez if it would be all right to speak with Robles-Aguirre and if Jimenez Fernandez would mind waiting in the cruiser. Jimenez Fernandez agreed. Deputy Wintle advised Robles-Aguirre he was not going to issue any tickets and asked if he could ask her some questions. Robles-Aguirre agreed and again said she did not know the city to which the couple was traveling.

Deputy Wintle returned to the cruiser, asked whether there was contraband in the vehicle, and obtained Jimenez Fernandez's written consent to search. The consent form was written in English and Spanish. Five minutes elapsed from the time Deputy Wintle returned Jimenez Fernandez's documents to the time he asked for consent to search. Jimenez Fernandez read and signed the consent form about a minute later. Deputy Wintle then obtained Robles-Aguirre's written consent on the same form two to three minutes after that.

Having obtained consent, Deputy Wintle and another officer who had arrived on the scene searched the vehicle and found a compartment under the front seat that contained a large amount of cocaine. The vehicle was impounded, and Jimenez Fernandez and Robles-Aguirre were arrested. Jimenez Fernandez later voluntarily made incriminating statements to the police.

On November 28, 2016, Jimenez Fernandez and Robles-Aguirre each moved to suppress the evidence derived from the traffic stop and the search of their vehicle. The magistrate judge held an evidentiary hearing at which Deputy Wintle was the only witness. The magistrate judge also admitted into evidence photographs of the rear license plate, a copy of the consent form, and a video and audio recording of the stop taken from a camera in Deputy Wintle's cruiser.

After considering the evidence and the parties' respective arguments, the magistrate judge determined that the traffic stop was valid and that, after the stop ended, Jimenez Fernandez voluntarily agreed to answer questions and consented to the search.

The magistrate judge alternatively found Deputy Wintle had "reasonable suspicion to continue the detention further."  With respect to Robles-Aguirre, the magistrate judge concluded she did not have standing to challenge the search because she failed to establish a reasonable "expectation of privacy in the floorboard of the vehicle."  The magistrate judge recommends the Court deny both Motions to Suppress.

## II.  DISCUSSION

### A.  Standard of Review

Under 28 U.S.C. § 636(b)(1), the Court may designate a magistrate judge to conduct an evidentiary hearing and submit "proposed findings of fact and recommendations for the disposition" of a motion to suppress.  The Court then must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*  "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."  Fed. R. Crim. P. 59(b)(3).

### B.  Failure to Object

Robles-Aguirre did not object to the magistrate judge's Findings and Recommendation.  *See* 28 U.S.C. § 636(b)(1); NECrimR 59.2.  Failing to timely object forfeits Robles-Aguirre's right to review by this Court.  *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 619-20 (8th Cir. 2009) ("[T]he failure to file objections eliminates not only the need for de novo review, but *any* review by the district court.") (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("We are therefore not persuaded that [section 636(b)(1)] requires some lesser review by the district court when no objections are filed.")) (alteration in *Leonard*).  As discussed more fully below, even if Robles-Aguirre had objected to the magistrate judge's Findings and Recommendation, the Court would have denied her Motion to Suppress for the reasons stated by the magistrate judge.

### C.     Traffic Stop

Jimenez Fernandez argues the traffic stop "was unconstitutional because it is not objectively reasonable that there was probable cause to conduct a traffic stop."   In Jimenez Fernandez's view, "[t]he fact that the plate was legible to the Deputy, despite him saying it was not, suggests that the Deputy pulled the vehicle for reasons other than a traffic violation."  Jimenez Fernandez's arguments are without merit.

The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures" by the government.  U.S. Const. amend. IV.  "A traffic stop is a seizure within the meaning of the Fourth Amendment."  *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008).  "[A] traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred."  *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006).  "Any traffic violation, however minor, provides probable cause for a traffic stop."  *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc).  "This is true even if a valid traffic stop is a pretext for another investigation."  *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002).

Here, Deputy Wintle testified he stopped Jimenez Fernandez because the name of the issuing state on his rear license plate was obstructed in violation of § 60-399(2).  That statute requires

> All letters, numbers, printing, writing, and other identification marks upon [license] plates . . . shall be kept clear and distinct and free from grease, dust, or other blurring matter, so that they shall be plainly visible at all times during daylight and under artificial light in the nighttime.

*Id.*  "The determinative question is not whether [Jimenez Fernandez] actually violated [§ 60-399(2)], but whether an objectively reasonable police officer could have formed a reasonable suspicion that [he] was committing a [traffic] violation.  *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005).

On the facts of this case, the Court has no trouble concluding an objectively reasonable law-enforcement officer could (at least) reasonably suspect Jimenez Fernandez's partially obstructed plate violated § 60-399(2). *See*, *e.g.*, *id.*; *State v. Beal*, 846 N.W.2d 282, 292 (Neb. Ct. App. 2014) (concluding an officer had probable cause to stop a van for violating § 60-399(2) where "he was unable to read the plate" in part because there was "a license plate bracket that obscured the portion of the plate indicating what state the van was registered in"). The evidence presented at the suppression hearing establishes that the name of the issuing state on Jimenez Fernandez's rear license plate, Oregon, was almost entirely obstructed by a license-plate bracket containing a large, chrome eagle with outspread wings. Only three letters were even partially visible. In the Court's view, a reasonable officer could conclude that "letters" in the name of the issuing state so obstructed were not "clear and distinct . . . so that they [were] plainly visible at all times." *See* Neb. Rev. Stat. § 60-399(2). The traffic stop did not violate the Fourth Amendment.

### D.   Post-Stop Encounter and Search

Jimenez Fernandez next argues "Deputy Wintle unreasonably extended the traffic stop for nearly seven (7) minutes" "without reasonable suspicion that a crime was being committed." *See*, *e.g.*, *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015). Again, the Court disagrees.

"Not all personal encounters between law enforcement officials and citizens fall within the ambit of the Fourth Amendment." *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001) ("A Fourth Amendment 'seizure' does not occur merely because a police officer requests permission to search an area or poses other questions to a citizen."). If an encounter with police becomes consensual after a traffic stop is complete, "it is not a seizure, 'the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle.'"

*United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010) (quoting *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007)).

An encounter is consensual if, under the totality of the circumstances, "a reasonable person would feel free to decline [an] officer['s] requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991); *accord United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996). "Circumstances supportive of finding a seizure" rather than a consensual encounter may "include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Flores*, 474 F.3d at 1103 (quoting *White*, 81 F.3d at 779).

No such coercive circumstances are present here. *See*, *e.g.*, *White*, 81 F.3d at 779 (concluding on similar facts that a driver "was no longer seized within the meaning of the Fourth Amendment after [the officer] returned [his] identification and issued a warning ticket"). The traffic stop in this case ended when Deputy Wintle advised Jimenez Fernandez he was not issuing a ticket and returned his paperwork. *See*, *e.g.*, *id; United States v. Garcia*, 613 F.3d 749, 753 (8th Cir. 2010). As he concluded the stop, Deputy Wintle, who remained polite and professional throughout the encounter, advised Jimenez Fernandez that he might want to remove the license bracket at the next gas station or rest stop so the couple would not get stopped again.

Upon returning all of the couple's paperwork, Deputy Wintle asked whether Jimenez Fernandez had any questions, to which he answered, "No." Deputy Wintle then asked if he could ask "a couple more questions." Jimenez Fernandez quickly said, "Sure." *See*, *e.g.*, *Garcia*, 613 F.3d at 753 (concluding a driver's willingness to answer a question after being let off with a warning "indicat[ed] consent to further discussion"). After a brief discussion of his travel plans, Jimenez Fernandez voluntarily agreed to wait

while Deputy Wintle spoke with his wife and willingly provided a written consent to search without any hesitation.

"[T]he tone of the entire exchange was cooperative." *White*, 81 F.3d at 779. Deputy Wintle "was the only officer present, he did not display his weapon, he did not touch [Jimenez Fernandez], he returned everything [Jimenez Fernandez] needed to continue his trip, he merely requested further cooperation." *Munoz*, 590 F.3d at 921 (finding such an encounter consensual). Given Jimenez Fernandez's ready willingness to answer additional questions and the absence of any coercive circumstances in this case, the Court finds the post-stop encounter was entirely consensual. *See*, *e.g.*, *White*, 81 F.3d at 778 ("[A]fter [the driver's] license and registration were returned and the warning was issued, the encounter became nothing more than a consensual encounter between a private citizen and a law enforcement officer."); *Garcia*, 613 F.3d at 753.

Alternatively, even if Jimenez Fernandez had not consented to the post-stop encounter, the Court agrees with the magistrate judge that the circumstances of this case gave Deputy Wintle reasonable suspicion to believe Jimenez Fernandez and Robles-Aguirre may have been involved in criminal activity unrelated to the stop. "An officer may expand the scope of a traffic stop beyond the initial reason for the stop and prolong the detention if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the stop is afoot." *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008).

"This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth

8

Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007).

Here, the defendants' "unusual" and "suspicious travel plans" and scant information about Jimenez Fernandez's brother provided Deputy Wintle more than an inchoate hunch "that criminal activity was afoot." *United States v. Beck*, 140 F.3d 1129, 1134, 1139 (8th Cir. 1998) ("[U]nusual or suspicious travel plans may give rise to reasonable suspicion."). During the traffic stop, Deputy Wintle asked the defendants some routine questions about their travel plans. Although the defendants indicated they were traveling more than a thousand miles in a borrowed car from Oregon to Iowa on vacation to visit Jimenez Fernandez's brother for a few days, neither Jimenez Fernandez nor Robles-Aguirre could name their destination city—simply saying they were going somewhere in Iowa. Jimenez Fernandez reported he did not have an address for his brother and did not know in which city he lived, so he just input "Iowa downtown" into his GPS to know where to go.

At the suppression hearing, Deputy Wintle testified he had made thousands of stops in his twenty-seven years in law enforcement and in fewer than ten, the travelers "did not know what city they were traveling to." Deputy Wintle explained Jimenez Fernandez's answers "raised some red flags that there was . . . something going on" because in previous cases he has had "where people were either unwilling or unable to tell [him] what city they were going to" he "found large amounts of drugs." Even someone without Deputy Wintle's extensive law-enforcement experience, could reasonably find the defendants' travel plans "unusual" and "suspicious." They had the name of their destination state but little else—no city or town, no address, no way to contact Jimenez Fernandez's brother other than Facebook, and no plausible explanation for where or when they would stop to contact him.

The Court finds the defendants' inability or unwillingness to provide answers to routine questions about their travel plans provided Deputy Wintle with a "minimal, objective justification" to detain the defendants for a few minutes to ask additional questions to allay his reasonable suspicion and to seek consent to search.  *Lyons*, 486 F.3d at 371; *see also United States v. Carpenter*, 462 F.3d 981, 987 (8th Cir. 2006). "[A]sking questions and seeking to obtain consent to search the [car] were reasonable and permissible methods of continuing the investigation that did not unduly prolong the detention."  *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008).

## III.   CONCLUSION

Deputy Wintle had reasonable suspicion—if not probable cause—to stop Jimenez Fernandez for violating § 60-399(2) because of the obstructed lettering on his license plate.  When the traffic stop ended, Jimenez Fernandez voluntarily agreed to answer additional questions and willingly consented to the search.  Because the stop and search did not violate the Constitution,

IT IS ORDERED:

1. Defendant Marco Jimenez Fernandez's objection (Filing No. 39) to the magistrate judge's Findings and Recommendation is OVERRULED.

2. The magistrate judge's oral and written Findings and Recommendation (Filing Nos. 35, 38) are ACCEPTED.

3. Jimenez Fernandez's Motion to Suppress (Filing No. 24) is DENIED.

4. Defendant Margarita Robles-Aguirre's Motion to Suppress (Filing No. 26) is DENIED.

Dated this 10th day of February, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge